## LILLIE v. DENNERT.

(Circuit Court of Appeals, Sixth Circuit.   May 2, 1916.)

No. 2734.

1. JURY ⊜⟶19(1)—RIGHT TO JURY TRIAL.
    Under the modern practice of allowing a motion to enter satisfaction
of a judgment at law, by reason of its payment or discharge, as a sub-
stitute for the writ of audita querela, the trial of controverted issues of
fact arising under such motion is ordinarily to be had in the same man-
ner as under such writ; that is, by jury trial.
    [Ed. Note.—For other cases, see Jury, Cent. Dig. § 104;  Dec. Dig.
⊜⟶19(1).]

2. COURTS ⊜⟶356—REVIEW—QUESTION REVIEWABLE—OBJECTIONS.
    Where a motion to enter satisfaction of a judgment was tried to the
court, but a jury was not waived, the appellate court on writ of error will
not, no objection having been made, consider whether the order of the
lower court was a mere award of an arbitrator, but will treat the decision
as one which can be reviewed.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 937;  Dec. Dig.
⊜⟶356.]

3. APPEAL AND ERROR ⊜⟶859—WRIT OF ERROR—MATTERS REVIEWABLE.
    The right of review under writ of error is limited to questions of law,
and does not extend to matters of fact; therefore, where a motion to
enter satisfaction of a judgment was tried to the court, matters of fact
cannot be reviewed, save in so far as the appellate court may determine
whether there was any evidence which would warrant the finding.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3441–
3445;  Dec. Dig. ⊜⟶859.]

4. JUDGMENT ⊜⟶878(2)—SATISFACTION—EFFECT.
    Where one of two joint tort-feasors satisfied a judgment against both,
the judgment was discharged, though he induced a third person to pay
the judgment for him and to make an assignment.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1654;  Dec.
Dig. ⊜⟶878(2).]

5. JUDGMENT ⊜⟶894—SATISFACTION—EVIDENCE.
    On motion to enter satisfaction of a judgment, evidence held to warrant
a finding that one of the two joint tort-feasors against whom it was ren-
dered satisfied the judgment through the agency of a third person.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1706–1709,
1712;  Dec. Dig. ⊜⟶894.]

In Error to the District Court of the United States for the West-
ern District of Michigan;  Clarence W. Sessions, Judge.

Charles P. Lillie, the assignee of a judgment, moved for an execu-
tion against Paul Dennert, one of the defendants, who filed a petition
praying the court to enter satisfaction of the judgment.   Satisfaction
of the judgment was ordered entered, and Charles P. Lillie brings er-
ror.   Affirmed.

G. C. Brown, of Grand Rapids, Mich., for plaintiff in error.

C. J. Hall, of Grand Rapids, Mich., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SAN-
FORD, District Judge.

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SANFORD, District Judge. This writ of error is brought to review an order entering satisfaction of a judgment obtained in the court below.

On December 17, 1913, one Charles R. Horrie, the plaintiff in an action at law brought against one Edgar P. Daggett and Paul Dennert, the defendant in error, as joint tort feasors, obtained a judgment against them jointly for $2,683 and costs. On February 9, 1915, this judgment was assigned by Horrie to Charles P. Lillie, the plaintiff in error.

This assignment having been filed in the clerk's office, Lillie moved the court for the issuance of a body execution against Dennert. This motion, being resisted, was heard by the trial judge on oral testimony taken before him, and was, after such hearing, denied. On application of Lillie an execution and a garnishment against Dennert were then issued for the admitted purpose of collecting the entire judgment out of his property. Thereupon Dennert filed a petition, in which he alleged, in substance: that his co-defendant Daggett had paid the full amount of the judgment to the plaintiff Horrie and satisfied the same; that, while this payment purported to have been made by Lillie and an assignment of the judgment had been taken by him, the money paid to Horrie was in reality the money of Daggett, the payment, as a matter of fact and law, the act of Daggett, and the action taken by Lillie a mere sham and pretense; and that Lillie had refused to discharge the judgment of record as he ought to do, and was attempting by his proceeding to compel a contribution by Dennert to Daggett a joint tort feasor, not warranted by law. And he thereupon prayed that an order be entered withdrawing the execution, discharging the garnishment and entering satisfaction of the judgment.

Lillie answered this petition, denying the foregoing allegations of fact, and alleging, in substance: that he had paid Horrie the amount of the judgment with his own money; that no part of it was received by him from or for Daggett; that he took the assignment as his own property, with all rights to enforce it given by law; that it had not been paid and was wholly unsatisfied; and that he was its individual and sole owner.

The issues raised by this petition and answer were heard and determined by the trial judge upon the oral testimony heard by him on the previous motion for body execution, a transcript of which was filed with the petition and incorporated therein by reference; upon the consideration of which, without handing down any opinion or making any finding of facts, he entered an order that the judgment was fully paid and satisfied on February 9, 1914, directing the clerk to make an entry of such satisfaction, recalling the execution and dismissing the garnishment proceedings.

Lillie by his writ of error now seeks to review this order. It has been held that such an order is a decision from which a writ of error will lie. See McCutcheon v. Allen, 96 Pa. 319, 329; also Cooley v. Gregory, 16 Wis. 303, in which an appeal was allowed. In view of the result which we reach on the merits, we assume, without deciding, that the proper remedy has been adopted.

[1] The scope of the review permissible under such writ of error is, however, in the instant case, a matter of grave doubt. Under the established modern practice allowing a motion to enter satisfaction of a judgment at law, by reason of its payment or discharge, as a substitute for the ancient writ of audita querela, the trial of controverted issues of fact arising under such motion, is ordinarily to be had in the same manner as under such writ, that is, by jury trial; to which several state courts have held the parties are entitled as a matter of right. Harding v. Hawkins, 141 Ill. 572, 584, 31 N. E. 307, 33 Am. St. Rep. 347; Bruce v. Barnes, 20 Ala. 219, 222; McCutcheon v. Allen (Pa.) supra, at page 323; Hottenstein v. Haverly, 185 Pa. 305, 308, 39 Atl. 946; Cooley v. Gregory (Wis.) supra, at page 326; and other cases therein cited. And see 2 Black on Judgments (2d Ed.), § 1014, p. 1491.

[2, 3] Sections 648 and 649 of the Revised Statutes (Comp. St. 1913, §§ 1584, 1587), however, provide that the trial of issues of fact in the Circuit Courts shall be by jury, except in certain cases not here material, unless the parties or their attorneys file with the clerk a stipulation in writing waiving a jury; in which case they may be tried and determined by the court. Neither of these sections is repealed by the Judicial Code; and they,—as well as Section 700 providing for review,—are clearly made applicable to the District Courts, as now constituted, by Section 291 of that Code. Act March 3, 1911, c. 231, 36 Stat. 1167 (Comp. St. 1913, § 1268). If, therefore, the issues of fact arising under a motion to enter satisfaction of judgment are to be considered as coming within the class of issues embraced within Sections 648 and 649 of the Revised Statutes, it would seem clear that where the parties, without filing a written stipulation waiving a jury trial, either expressly, or, as in the instant case, impliedly, submit the determination of the controverted issues to the trial judge, as, in effect, to an arbitrator, his conclusion is,—at least in the absence of a finding of facts,—not subject to review under writ of error, on a consideration either of the questions of fact or of law, or of mixed fact and law, arising on the evidence heard before him. Campbell v. Boyreau, 21 How. 223, 226, 16 L. Ed. 96; Bond v. Dustin, 112 U. S. 604, 606, 5 Sup. Ct. 296, 28 L. Ed. 835; Andes v. Slauson, 130 U. S. 435, 438, 9 Sup. Ct. 573, 32 L. Ed. 989; St. Louis v. Rutz, 138 U. S. 226, 241, 11 Sup. Ct. 337, 34 L. Ed. 941; Lupton's Sons v. Auto Club, 225 U. S. 489, 494, 32 Sup. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699. And see Edwards v. Ladow (6th Cir.) 230 Fed. 378, —— C. C. A. ——. In the absence, however, of any objection interposed in this behalf by the defendant in error, we are not disposed of our own motion, to apply the rigor of this rule to the instant case, but shall assume, for present purposes, without determination, that it is not applicable, in its strict sense, to the subordinate issues of fact submitted to the determination of the trial judge upon a motion to enter satisfaction of judgment of the court; that in such matter he acts in his judicial capacity rather than merely as arbitrator, and that hence, as to the questions thus determined by him, we have authority, under a writ of error to review the evidence for the purpose of de-

termining whether any error of law has been committed. It is entirely clear, however, that as the right of review under writ of error is limited to questions of law and does not extend to matters of fact (Andes v. Slauson, supra, 130 U. S. at p. 348, 9 Sup. Ct. 573, 32 L. Ed. 989), we can not in any event review the conclusion of the trial judge in so far as it depends upon a mere consideration of the weight to be given the evidence introduced before him, and that his conclusion is to be accepted by us as final if there was any evidence upon which, as matter of law, it could properly have been reached. See, by analogy, Hathaway v. Cambridge, 134 U. S. 494, 498, 10 Sup. Ct. 608, 33 L. Ed. 1004; Runkle v. Burnham, 153 U. S. 216, 225, 14 Sup. Ct. 837, 38 L. Ed. 694; Dooley v. Pease, 180 U. S. 126, 131, 21 Sup. Ct. 329, 45 L. Ed. 457; West Virginia Railroad v. United States (4th Cir.), 134 Fed. 198, 202, 67 C. C. A. 220; and Louisville Railroad v. United states (D. C.) 216 Fed. 672, 679 (three judges), and cases therein cited.

[4, 5] The following facts are shown by the undisputed evidence: After the rendition of the judgment in Horrie's favor and notice from his attorney that he was about to obtain an execution thereon, Daggett, under the advice of his attorney, offered to pay Horrie one-half of the judgment, if he would proceed against Dennert for the other half; and deposited in bank one-half of the amount of the judgment, taking therefor a certificate of deposit with which he intended to make the proposed payment. This proposition was declined by Horrie; his attorney stating, however, that in order to assist Daggett, he would be willing to assign the entire judgment to some third person. Thereupon Daggett's attorney advised him to get some one friendly to him to buy the judgment, but with his own money and as an actual purchase. Daggett accordingly saw Lillie, who was his friend and business associate, and asked him, as Lillie states, "to buy that judgment for him"; telling Lillie at the time that he would see that he did not lose anything by it. Lillie agreed to do this; and in order that he might obtain the money with which to make the purchase, Lillie and Daggett went together to the bank in which Daggett held his certificate of deposit, being the bank in which Daggett's company regularly did business and in which he was well known, but at which Lillie had not done business for several years or apparently ever made a previous loan. Daggett and Lillie saw the cashier of this bank and arranged for a loan to Lillie for the full amount of the judgment; Lillie giving the bank his three months' note therefor, without endorsement. After Lillie had given this note, Daggett stated that he had a certificate of deposit for one-half of the amount which he had forgotten to bring, and told the cashier that he would bring it in and deposit it as security on the note. This he did on the next day. Lillie took the money thus obtained from the bank on his note, and with it paid Horrie the full amount of the judgment; taking from him the assignment which is now in question. Subsequently on receiving from the bank notice of the maturity of the note, Lillie notified Daggett, who said he would take care of the interest; the note being accordingly renewed by Lillie and the interest paid by Daggett. This renewal

note is still unpaid and outstanding in the hands of the bank as Lillie's individual obligation alone. Lillie, however, admitted that he did not buy the judgment as an investment for his own money; that he had no personal interest in the matter and did what he did for Daggett as his friend; that he understood at the time that the judgment was to be bought in his name in order that he might collect one-half of it from Dennert, and that, as Daggett could not pay it in his own name and collect from Dennert, it was necessary to have the assignment taken in the name of a third party; and that the whole arrangement, so far as he was concerned, was made for Daggett's benefit. And he further admitted that he had never made any demand upon Daggett for payment of the judgment, but stated that if he had to pay the note, he intended to look to Daggett on his word to hold him harmless.

Daggett also admitted that, realizing that he could not himself pay the judgment and then collect the one-half from Dennert, he went to Lillie as his friend and asked him to take up the judgment for him, promising him at the time that he would see him through and see that he did not lose anything.

It is not disputed that if the judgment was in fact paid by Daggett, one of the joint tort feasors and judgment debtors, this operated as a satisfaction and discharge of the judgment. Klippel v. Shields, 90 Ind. 81, 82; Booth v. Farmers' Bank, 74 N. Y. 230, 232; Hammatt v. Wyman, 9 Mass. 138, 142; Sager v. Moy, 15 R. I. 528, 9 Atl. 847. It is earnestly insisted, however, in behalf of Lillie, that the undisputed evidence does not warrant such conclusion, but that it shows, on the contrary, that the judgment was in fact bought by Lillie with his own money and as a stranger to the judgment, although as an accommodation for Daggett; that he took an assignment thereof with the express intention of keeping the judgment alive and enforcing its collection; that under such circumstances the purchase of the judgment by him did not operate as a discharge, under the rule stated in McAleer v. Young, 40 Md. 439, and other cases on which he relies; and that, in any event, the giving of security to him by Daggett for one-half of the judgment, operated at the most, as a payment of one-half of the judgment, and did not discharge the remaining one-half, which he is now entitled, in any event, to enforce against Dennert.

After careful consideration we are, however, of the opinion that, under the undisputed evidence, there was ample room for an inference of fact that while the entire loan in the bank was ostensibly made in Lillie's name, and the note, as between himself and the bank, constituted his individual debt, yet, as between Lillie and Daggett, the entire transaction amounted, in substance and in effect, to the borrowing of the money by Lillie as the agent for Daggett; as an undisclosed principal, the entire note constituting, as between them, Daggett's obligation rather than Lillie's; that the judgment having been purchased with the proceeds of this note was, in substance and effect, bought by Daggett, acting by indirection, through the instrumentality of Lillie; in short, that Lillie acted in the entire transaction merely as a man of straw for and in behalf of Daggett, as the real actor.

If, however, the judgment was thus in fact bought by Daggett, one of the joint tort feasors and judgment debtors, this clearly operated as an entire discharge and satisfaction of the judgment, even although the purchase was ostensibly made by Lillie and the assignment taken in his name in the effort to keep the judgment alive as an obligation against Dennert. Boyer v. Bolender, 129 Pa. 324, 328, 18 Atl. 127, 15 Am. St. Rep. 723; Tompkins v. Bank, 53 Ill. 57, 59; Ten Eyck v. Craig, 62 N. Y. 410, 416; Booth v. Farmers' Bank, supra, 74 N. Y. at page 232. And see Harbeck v. Vanderbilt, 20 N. Y. 395. And as the evidence, in our opinion, warrants an inference that this was the fact, we cannot say that the conclusion of the trial judge that the judgment was paid and discharged, is supported by no evidence upon which, as matter of law, it could have been properly based. Finding, therefore, no error of law in the order entering satisfaction of the judgment, it must accordingly be affirmed, with costs.